| 63 | 25 |
| f 107 | 404 |

GERRITT DeGRAFF, GERRITT J. VREILING, AND PETER VOLMARI v. EDWIN BYLES.

*Sale—Delivery—Rescinding contract—Bona fide purchasers—Title —Mortgage—Description of property in.*

1.  Plaintiffs' vendor contracted for the sale of 100,000 feet of lumber, of dimensions specified in saw-bill attached to contract, to be delivered at a *specified* steamboat landing by a *given* date, for $875, payable, $150 down, and the balance in the vendee's notes, to be delivered on delivery of lumber. After the delivery of 53,251 feet of the lumber, the notes were given and accepted, and prior to the date fixed for such delivery in contract 53,395 feet more was delivered. Prior to such *second* delivery the vendee mortgaged to defendant 25,000 feet of the lumber, described as lying at said steamboat landing, who, before the maturity of said notes, removed the lumber to a vacant lot, and sold it under the mortgage, he being the purchaser.

    About the time of such removal the vendor attempted to rescind the contract, claiming that the delivery of 6,000 feet in excess of that contracted for rendered the delivery uncertain and prevented the title passing to the vendee, and thereupon tendered to the vendee the $150 and the notes, who refused to return the lumber; whereupon the vendor replevied it, and sold it to plaintiffs, who knew it was replevied, and who, *after* demand, replevied the 25,000 feet from said mortgagee.

*Held*, that plaintiffs were *not bona fide* purchasers without notice, and could claim no greater rights in the lumber than their vendor.

*Held*, further, that the *title* to the lumber passed to the vendee, and all that the vendor could possibly claim would be the excess of 6,000 feet, to be taken out in such a manner as not to inconvenience the vendee.

2.  A mortgage on property described as "25,000 feet of hemlock studding, joist, and plank, 12 feet long and upwards, lying on Ganoe's dock," is not uncertain on its face.

3.  A mortgagee in *possession* cannot be deprived of the mortgaged property without redemption.

So *held*, where a vendee mortgaged a portion of a lot of lumber, the title to which had passed to him by delivery and payment of the purchase price, after which the vendor attempted to rescind the contract of sale and sold the lumber to other parties, who replevied from the mortgagee, denying the validity of his mortgage.

Error to Kent. (Smith, J., presiding.) Argued July 15, 1886. Decided October 7, 1886.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion, and in head-note 1.

*Maher & Felker*, for appellant:

Under the circumstances of this case, as a matter of law, the title to the first barge-load of lumber at least had passed to and was vested in Rittenhouse at the time he gave the mortgage to the defendant, and the jury should have been so instructed: *Gavigan v. Evans*, 45 Mich. 597; *Whitcomb v. Whitney*, 24 Id. 486; *Adams Mining Co. v Senter*, 26 Id. 73; *Colwell v. Keystone Iron Co.*, 36 Id. 51; *Hart v. Summers*, 38 Id. 399; *Carpenter v. Graham*, 42 Id. 191; *Byles v. Colier*, 54 Id. 1, 4–6; *Lingham v. Eggleston*, 27 Id. 324; *Hotchkiss v. Hunt*, 49 Me. 213; *Thompson v. Conover*, 32 N. J. L. 466; *Terry v. Wheeler*, 25 N. Y. 520; *Bucknam v. Nash*, 12 Me. 474; *Nichols v. Morse*, 100 Mass. 523; *Middlesex Co. v. Osgood*, 4 Gray, 449; *Dixon v. Yates*, 5 B. & Ad. 313, per Parke, J.; *Gilmour v. Supple*, 11 Moore, P. C. 551, 556; *Calcutta Nav. Co. v. De Mattos*, 32 L. J. (N. S.) Q. B. 322, 328; *Rodgers v. Phillips*, 40 N. Y. 523.

The delivery in this case was all that the contract contemplated, and was therefore sufficient: *Morrow v. Camp-*

*bell*, 30 Wis. 90; *Rattary v. Cook*, 50 Ala. 352; *Hurd v. Cook*, 75 N. Y. 454; *Bell v. Farrar*, 41 Ill. 400; *Graff v. Fitch*, 58 Id. 373; *Gilman v. Hill*, 36 N. H. 311; *Fitch v. Burke*, 38 Vt. 683; *Bush v. Barfield*, 1 Cold. 92; *Boswell v. Green*, 25 N. J. L. 390; *Burrows v. Whitaker*, 71 N. Y. 291; *Sedgwick v. Cottingham*, 54 Iowa, 512.

Upon the sale of a specified quantity of grain, its separation from a mass, indistinguishable in quality or value, in which it is included, is not necessary to pass the title when the intention to do so is otherwise clearly manifested: *Cushing v. Breed*, 14 Allen, 376; *Kimberly v. Patchin,* 19 N. Y. 330; *Hurff v. Hires*, 11 Vroom, 581; *Waldron v. Chase*, 37 Me. 414.

So of brick (*Damon v. Osborn*, 1 Pick. 477; *Crofoot v. Bennett*, 2 N. Y. 258); oil (*Whitehouse v. Frost*, 12 East, 614); Spanish dollars (*Jackson v. Anderson*, 1 Taunt. 24); barrels of flour (*Pleasants v. Pendleton*, 6 Rand. 473; *Woodley v. Coventry*, 2 H. & C. 164); iron ore (*Iron Cliffs Co. v. Buhl*, 42 Mich. 86); barrels (*Carpenter v. Graham*, 42 Mich. 191); bags of coffee (*Gardner v. Dutch*, 9 Mass. 427); sacks of flour (*Gillett v. Hill*, 2 C. & M. 531); sacks of barley (*Knights v. Griffen*, L. R. 5 Q. B. 660); zinc (*Farmeloe v. Bain*, L. R. 1 C. P. Div. 445); billiard tables (*Clark v. Griffith*, 24 N. Y. 595).

At the time the mortgage was taken, an examination was had of the lumber, and it was agreed that the mortgage should apply to a certain pile. This testimony was admissible to show the particular lumber which the mortgage was intended to cover: *Farwell v. Fox*, 18 Mich. 166; *Willey v. Snyder*, 34 Id. 60; *Eddy v. Caldwell*, 7 Minn. 225; *Stephens v. Tucker*, 55 Ga. 543; *Sargeant v. Solberg,* 22 Wis. 132; Jones, Chat. Mort. § 64.

The rescission of the contract by Taft only operated to vest in him the interest which Rittenhouse still retained in the lumber:   Benj. Sales (3d Am. ed.), § 433.

This Court has never been called upon to reverse a judgment for instructions directing the attention of the jury specifically to testimony, but it has held that no error was committed in refusing them: *Beurmann v. Van Buren*, 44 Mich. 497; *People v. Crawford*, 48 Id. 498.

He who without fraud or intentional wrong, or reckless disregard of the rights of others, mingles his goods with those of another person in such a manner that they cannot be distinguished, should nevertheless be protected in his ownership so far as circumstances will permit: *Wetherbee*

*v. Green*, 22 Mich. 311–317; *Stephenson v. Little*, 10 Id. 433; *Johnson v. Ballou*, 25 Id. 460.

*J. A. Fairfield* (*Birney Hoyt*, of counsel), for plaintiffs:

A silent partner is not a necessary party plaintiff: *North v. Bloss*, 30 N. Y. 374; *Platt v. Halen*, 23 Wend. 457.

Where a broker does not have possession of goods he has no general authority as agent: *Higgins v. Moore*, 34 N. Y. 417; *Kornemann v. Monaghan*, 24 Mich. 36; *Reynolds v. Continental Ins. Co.*, 36 Id. 142.

A chattel mortgage of goods not owned by the mortgagor is void, and if the mortgagor subsequently acquires the goods the mortgage does not cover them: *Head v. Goodwin*, 37 Me. 185; *Low v. Pew*, 108 Mass. 347.

The contract did not call for this particular lumber, and was not a contract for all the lumber manufactured by Taft: *First Nat. Bank v. Crowley*, 24 Mich. 492.

The mortgage was void for uncertainty in the description: *Richardson v. Alpena Lumber Co.*, 40 Mich. 205.

CAMPBELL, C. J. Plaintiffs replevied from defendant about 25,000 feet of hemlock lumber, described as studding, joists, and plank, 12 feet long and upwards.

This lumber had been sent to Grand Rapids, and placed on a dock there, under a contract of April 12, 1883, between Harvey C. Taft as vendor and Albert E. Rittenhouse as vendee, whereby 100,000 feet of hemlock lumber, of 2 inches thick and upwards, and of lengths from 12 feet upwards, as specified in a saw-bill furnished, was to be delivered on the bank of the river, at the steamboat landing, by May 20, 1883, for $875, of which $150 was to be paid down, and the balance in two equal notes, due June 20 and July 20, to be given upon delivery of the lumber.

The cash payment was made at once, and the notes were given between May 7 and 9, and after correction were accepted May 12. Previously to this, one barge-load had been loaded, amounting to about 53,000 feet, or something over one-half of the whole amount purchased. A

second barge-load was landed as early as May 17, and probably earlier. This also contained about 53,000 feet, and of this there were some inch boards, the amount of which does not appear.

On some day in May, between the tenth and seventeenth, Rittenhouse made a mortgage to defendant, Byles, for $150, upon "twenty-five thousand feet of hemlock studding, joist, and plank, 12 feet long and upwards, the said lumber now being and lying on the dock (Ganoe's) in the city of Grand Rapids, Mich."

On June 1, 1883, before either of the notes given to Taft by Rittenhouse became due, Taft undertook to rescind the contract, and tendered Rittenhouse the $150 and the two notes, and demanded the lumber, which Rittenhouse said was not his to return.

Taft then replevied it on that day, and on the fourth made a sale to plaintiffs—who knew it was replevied—of the lumber on the landing, for which they were to pay $7.75 a thousand for so much as they received, to be measured when put on their wagons. They paid down $300. According to some of their testimony, it was supposed about 90,000 feet was on the dock. A large amount disappeared, which was supposed to have floated off. This occurred subsequently.

This 25,000 feet was drawn away before, so far as appears, any of the rest floated away. No payment was made to Taft by plaintiffs, so far as appears, beyond the $300. It is claimed that, including the 25,000 feet, they only got about 56,000 feet.

Defendant's mortgage was filed May 17, 1883.

It cannot be claimed that plaintiffs were *bona fide* purchasers without notice, or that they ever became owners of any lumber which Taft did not own and was not in condition to deliver. Their purchase put them at no risks, and all the losses were Taft's until the lumber was

loaded on their wagons. It might be open to some ques-
tion whether, under such a contract as the plaintiffs swore
to, the 25,000 feet held by defendant, and moved away
before plaintiffs meddled with it, passed to them at all,
mortgaged or not mortgaged; but as Taft and plaintiffs
seemed to treat it as theirs, this point is not presented.
But there is nothing to put them in any better position
than Taft himself would have occupied had he never sold
to them.

A question was raised below of want of parties. But
on the argument in this Court defendant waived all ques-
tions not going directly to the merits.

The court below made the case turn chiefly, though not
entirely, on whether title passed to Rittenhouse, and left it
to the jury to ascertain that fact. If it did, then the
rescission, as was properly ruled, could not affect defend-
ant's mortgage, if otherwise valid.

We do not think that there is any room for doubt con-
cerning the passage of the title. By the terms of the contract
Taft was to deliver the lumber at the landing, and upon its
delivery Rittenhouse was to give his two notes. The lum-
ber was placed where the contract provided, and the notes
were given and accepted. The claim now is that, because
Taft put 6,000 feet of lumber in that had not been
bargained for, it left the delivery uncertain, and no title
passed.

We think that he could not, after receiving, as he did,
the entire consideration in the manner called for in the
contract, set up any such claim. All that he could possi-
bly claim under such circumstances would be a right to take
out the excess in such manner as not to inconvenience his
vendee. Any other rule would favor the grossest fraud.
The plain intent of the contract would be violated if,
when the notes were given and lumber landed, the vendee
could be deprived of ownership by any such device.

It is agreed on all sides. that this question must be decided without reference to any fraud which might give Taft a right to rescind. No such rescission was attempted until June, after defendant's mortgage had been recorded a fortnight. This being so, Rittenhouse had power to deal with the lumber as lawful owner, and all persons acquiring rights in good faith should be protected.

The only objection made to defendant's mortgage is that it is uncertain.

There is no uncertainty on its face. It is given for 25,000 feet of hemlock studding, joist, and plank, 12 feet long and upwards, lying on Ganoe's dock. The testimony shows, and the contract of sale to Rittenhouse shows, that this lumber was all reckoned at the same price by the thousand, and was presumably of the same value. Neither Taft nor plaintiffs are in any position to set up greater rights against it than Rittenhouse. He could not have disputed it, and could not have deprived defendant of the right to take that amount out of the whole mass. There is some dispute when this was done, but it was done before plaintiffs had selected it or moved it. As against Rittenhouse, if it was a fact that the second cargo came after the mortgage was made, it would not affect the right of selection, as the lumber was similar and treated as one mass. And when Taft set up his claim to rescind, he could only do so subject to the equities existing against Rittenhouse.

The question of regularity of defendant's foreclosure was not material. If not regular, which we see no particular reason to question, defendant was a mortgagee in possession, and plaintiffs could not deprive him of it without redemption.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.